that when a drug dog search or a search based on a traffic stop is unreasonably extended or prolonged beyond the amount of time necessary to complete the traffic citation that the 4th amendment may be violated and this court has multiple precedents involving the appropriateness of extending a search, it's a traffic search that extends to something far beyond a mere traffic citation and respectfully based on the record here Mr. Winters submits that the 4th amendment was violated by Officer Duggan and for that reason his conviction should be overturned. The most important facts in this case arise from a suppression hearing that took place before a magistrate judge in the Eastern District of Tennessee and I emphasize that it was before a magistrate judge because I noted in my brief that there is a question about the appropriate standard of review for this court in such a proceeding. Under our magistrate act the district court has completed an over review of decisions of magistrate judges. Oh no, no, no, no, only if they are timely filed objections. Your honor and in this case Mr. Winters objected to the magistrate's report and so after he objected to the magistrate's report the timely objection took place and the district court reviewed that report under de novo standard pursuant to the statute. So we're reviewing the district court's decision. That's correct and this court has held that this court reviews whether or not a stop has been unreasonably prolonged under de novo standard. I noted however that this court has a number of general suppression hearing standards that talk about de novo review with a presumption of the correctness of the finding of the district court and so what I was trying to do with the court was to be clear that with regard to the standard of review we have this general standard that this court has de novo review but with a presumption of correctness and it's my position that's illogical in the case where this court is reviewing a district court's de novo review of a magistrate judge's report and recommendation because that district judge's very review is entirely de novo with no presumption of correctness. But then isn't it adopted or it's whatever the district court says either I completely adopt it or I say whatever I say. It seems like you're trying to say that we would give it less deference because it started out with the magistrate judge and then de novo review but I don't follow that. Well, your honor, I mean there's usual standard in these suppression cases is that we look at it in the light most favorable to the district court and a couple of your best cases, I think I was on some of them, are cases where we are firming the suppression by the district court because we're giving them deference that way. That's correct and I think the issue and I just wanted to raise it because it's a little bit weird and it actually goes to some article three concerns which is where we have suppression hearings by magistrate judges that don't require the consent of the defendant and then we have an article three judge review it under a complete de novo review standard but then if this court has a de novo review but with a presumption of correctness, that actually weakens the defendant's article three rights and that's the concern. Because the standard ultimately is de novo, I want the court to be clear it is free to overturn the decision of the district court and it should. And we're also free to affirm it. Absolutely, your honor. My job here is to try to convince you that under the law, particularly under Illinois v. Cabalas, this court should reverse it. Okay, the time this happened, as I look at the timeline, about 25 minutes expired between the time that the stop was made and Big Red or Red, that's a country song, isn't it? There's somebody, Big Red. Or Red, I believe. Or Red, yeah. But before Or Red alerted on and hence found the matters that you want to have suppressed. That's correct, your honor. And it's not just a function of the amount of time. Well, you know, it's unduly delayed. My point is a function of sequence time as opposed to quantum time. And that is because at page 185 of the page ID, the officer Duggan had completed the traffic citation before he asked for further consent. If I read it in your summary, the unconstitutionality, and help me if I'm wrong here, really is between signing the ticket at 1224 and deploying the dog at 1228. I believe that's correct, your honor. And not just that, your honor. And that's why I hope the members of the court saw my Rule 28J citation. Yeah, I'm going to ask about that. This very issue is pending before the Supreme Court. They granted cert in the Rodriguez case out of the Eighth Circuit. And the split that occurred that I think justified the grant of cert was because the Eighth Circuit talked about an eight-minute stop. And the Supreme Court of New Mexico talked about a nine-minute stop. And the Supreme Court is now hopefully going to resolve this issue. But I think that the issue with regard to Illinois v. Cabalas is one of sequence time as opposed to quantum time. And so that's why it's the relevant fact here is that page 185 of this record, the citation was complete before the officer asked for consent from the passenger and then being rejected consent by both the driver and the passenger, chose to go back to his car, get his dog, run a search, all while this traffic stop had been completed. I take it, was there anything wrong in asking for consent after you hand the ticket instead of 30 seconds before you hand the ticket? Absolutely not, your honor. When the person says no, and by the way, the driver had just said no to consent. But when the passenger also says no and you've already completed the traffic stop under Illinois v. Cabalas, you've prolonged unreasonably the stop in order to conduct your drug search. The other string to their bow, which is reasonable suspicion having been activated, would I be correct that we should judge that as of 12-24 rather than some earlier time? That is, the officer is entitled to be judged based on what he has developed as of 12-24. With a caveat, and your honor is more familiar with this than me because in some cases your honor has been involved in, because it comes to that word out of Arizona v. Johnson, measurably extended. The concern of the Supreme Court in Arizona v. Johnson, which is a 2009 case, was that when a police officer makes a stop, that by pursuing questioning of the driver, the passengers, the police officer may be enacting a seizure of that person where they aren't allowed, aren't free to go. And so the Supreme Court again in Arizona v. Johnson was trying to say, wait a minute, we cannot measurably extend these traffic stops in order to conduct wide-ranging searches and seizures of people. And so your honor, Judge Boggs specifically, has struggled with what does that word measurably mean. Hopefully in Rodriguez, if the Supreme Court chooses to give us a little more guidance, it might help us out. They may address one or the other aspects of this. We don't know which one, if either, they'll address. And the two key facts here, your honor, with regard to that reasonable suspicion, are that there are two issues that came up in the questioning, proper questioning, of the officer and the passengers and driver of this car, which one had to do with the rental contract and who had authority to drive the car, and the second one had to do with the travel plans of the occupants of the vehicle. In each case, when given the opportunity to pursue that specific concern, the officer said, no, no, no, I'm not going to do that. I mean, again, this is a drug enforcement interdiction officer with a drug sniffing dog back in his car. So when given the chance to find out whether or not the cousin who was on the rental contract gave authority for these people to drive the car, he said, no, no, no, I'm not going to pursue that inquiry. I've got a suspicion there. Under the Fourth Amendment, it's an objective standard as opposed to a subjective standard, is it not? What is the standard of what exactly? Whether it's an unreasonable search and seizure is not evaluated from the subjective point of the officer but from an objective standpoint. So if the facts are such that objectively what happened was reasonable, it doesn't matter what the intentions of the officer were subjectively, and that's kind of what you're arguing. If he subjectively thought this was important, he would do something else. Well, objectively, if it's important, it doesn't matter what he thought or did. It does matter what he did, Your Honor, and that's why I'm not making a statement. We look at reasonable suspicion, whether the facts that came out to this officer, whether or not he acted on them or not, was enough under Terry v. Ohio to establish reasonable suspicion for a short detention, and here the detention is four minutes. It's 24 minutes. Well, it's four minutes after the purpose of the traffic stop is completed. I disagree, Your Honor, because if he's going to prolong the detention of these individuals, his questions about their travel plans and about the rental contract occurred far before 24 minutes after midnight. Well, nobody thinks those questions are improper, are they? Normal traffic stop, that kind of stuff happens all the time, and, you know, who are you, where you're going, and it's part, you know, when you have a 20-minute traffic stop, that's not unduly prolonged, I don't think. At least that's not my experience. New Mexico thought it was, and here the important thing, Your Honor, is that when facts arose that objectively, not subjectively, caused him to have reasonable suspicion, he did not pursue that line of inquiry. Let me stop you right there. Did you just say that facts arose that gave him reasonable suspicion? That would blow your case, wouldn't it? No, it wouldn't, Your Honor, because the problem for both Illinois v. Cabalas and Arizona v. Johnson is that Supreme Court is trying to prevent law enforcement officers from using traffic stops as a pretext or conversations that the officers have during a traffic stop to extend or prolong into a violation of the Fourth Amendment by unreasonably detaining people. I guess that's back to the unreasonably, so you're certain. I just want to make sure I heard you right, that you can get reasonable suspicion, but if you do it in the course of unreasonably prolonging, then you can't act on the reasonable suspicion? I mean, I can understand the argument, I just want to make sure you're making it. Go ahead, I want to talk about this. The key point is that when facts arise during the conversation that's permitted by Arizona v. Johnson that cause an officer to have questions, he may reasonably pursue that line of inquiry. That is not what happened here. He here did not look at their travel plans, he did not look at their rental contract, he went and got his drug dog, and that's the problem. Just assume for a minute that you're wrong on the law. Tell me why the facts that came out do not establish reasonable suspicion under Terry v. Ohio. Reasonable suspicion to ask questions about the rental contract or to go get his drug dog? To detain him for whatever time we're talking about here. Well, the purpose matters here, and that's, I think, the key thing for Illinois v. Cabalas, and that's the key thing for Arizona v. Johnson. Well, for further investigation, whatever Terry v. Ohio says, that the facts come out to establish that criminal activity may be afoot, why aren't the facts that came out sufficient under that standard? Because the officer is supposed to pursue those facts that come out, not other facts. And that's why it matters, Your Honor, that this officer did not look into the rental contract when given the opportunity, did not look into the travel plans when given the opportunity, but instead this drug interdiction guy goes and gets his drug dog. Lack of pursuit. Lack of pursuit. Another way, then. Okay, assuming all these facts came out, if he had pursued them, would you agree that that was reasonable suspicion, that these facts establish reasonable suspicion? What would he have found out when he inquired about the contract? If he called the cousin that he was told to talk to and she said, yes, I rent the car and I let them use it and I want them to use it, and they have total authority to use this car, that would have ended his rights under the Fourth Amendment to prolong this search. I should say his power. The right is the right held by Patrick Winters. The power is the power held by the police. The standard is whether it entitles him to investigate further, not necessarily what he would have discovered had he investigated further. But why aren't these facts enough to warrant further investigation? Apparently he didn't think they did because he didn't investigate them further. Get away from he. Why wouldn't these facts to a reasonable officer be sufficient to warrant further investigation? A reasonable officer should investigate those facts. Okay, so you agree that they do establish grounds for further investigation? Of those facts, yes, Your Honor. So the differential of the travel plans, the time, the cars listed for, that sort of thing? That's correct. Ultimately there's a question of how long we're going to let police officers detain free citizens on the highway. That's the ultimate question. But it matters. It matters that this drug and interdiction officer, instead of pursuing the questions related to the contract and related to the travel plans, didn't investigate those, he went and got Old Red. Let me ask you, just because we are running out of time, but you said something like enough reasonable suspicion to get Old Red. But one of the questions, and maybe that's the way I heard it at least, one of the sort of interesting or odd things about these stops and this stop in particular, where he's got the dog, a lot of times what you go is I need ten minutes to call for the dog, but he's got the dog. Is there any legal reason that while he's talking and so on, he says, well, I'll come back to the car, let's talk, and I'm going to get the dog ten minutes earlier. Would that have been unconstitutional? If he does it while he's doing the traffic stop, Illinois v. Kabbalah teaches us that that is okay. And that's why the Supreme Court was so careful in Illinois v. Kabbalah to say that the further searches, the further seizures cannot extend the time. Isn't that kind of odd in the situation where the guy has the dog, that if we made this kind of rule, then he just gets the dog earlier in the interaction and the people are no better off and they haven't been held. They might have even been held for less time. Well, it depends on when a free citizen is there and if the officer has a basis to go get the dog. But does he need a basis when he's got the dog if Kabbalah says it's not a search? I want you to be clear on what I'm asking, which is he takes one out and the other one out and he's got them in different places. Constitutionally, is there anything that while he's talking he couldn't have said, well, let's get the dog? Does he need a basis? Under Illinois v. Kabbalah, the answer is yes, it does matter, because the Supreme Court emphasized that the drug dog search in Illinois v. Kabbalah took place while the ticket was being written. That was very important to the Supreme Court because that's the only way we can rein in police officers. But that's what I mean then, that in this case, when he's got the dog with him, so he passed the case where he's got a call for the dog, then you agree that he could have gotten the dog while he's writing the ticket because you just said. He can't do it without unreasonably prolonging the stop under Illinois v. Kabbalah because he has to stop writing the ticket to go get the dog. And that is the prolongation that the Supreme Court is instructing us, all of us, is the problem under the Fourth Amendment. Rodriguez may tell us something about it. We'll see. Thank you, Your Honor. I have your time for rebuttal. Good morning. I'm Tara Bay. I'm an Assistant United States Attorney in Chattanooga. I wanted to clear up a couple things. First of all, regarding the issue of the proper standard of review, the district court's order says specifically the defendant has not objected to the basic facts as outlined in the magistrate judge's R&R. Instead, the defendant has objected to the findings and legal conclusions. And that's exactly what the defendant's objections are, to the magistrate's finding that the traffic stop had not been completed by 17 minutes after midnight and that the magistrate judge had found that there was reasonable suspicion to delay the detention until the drug dog alerted. The other thing I wanted to clear up is the Rodriguez case that defense has filed on 28J letter. That case in the Rodriguez case is similar to the defendant's misplaced emphasis on Illinois v. Cabalas. In Illinois v. Cabalas, the phrase that is missing from the defendant's argument is a seizure justified solely by the issuance of a traffic ticket cannot be unlawfully delayed. And if the only reason the person is being delayed is because of the traffic ticket, it cannot be prolonged. There's no discussion in Cabalas about reasonable suspicion. Similarly in Rodriguez, the lower court did not make a finding on whether there was any reasonable suspicion. The lower court just found that a delay of 7 or 8 minutes after the conclusion of the traffic stop to get the drug dog on the location was not unreasonable. So however the Supreme Court comes out on the Rodriguez case, we're still with the same question as was there reasonable suspicion to prolong the stop from the time of the stop until it... I don't think there's anything about the reasonable suspicion standard for amplifying or extending a stop. Is that the way you're putting it? Well, I don't think that that's what the certiorari, I think, is only for the issue of what's a reasonable delay after the initial reason for the stop has been completed. That Rodriguez is only about the pure time question when you don't have any other reasonable suspicion. Right. And of course if the Supreme Court says that 7 or 8 minutes without any reasonable suspicion is still a reasonable time of delay, then that would clearly be within the time limit that we have in our present case. But I believe that we're still going to need to ask the court to make a finding on the reasonable suspicion. And that really is why we're here. There wasn't any objection to the validity of the stop and on appeal the defendant has dropped his argument about Red being a certified dog and his detection being a probable cause of a surge of vehicles. So the question really is when did the traffic stop end? Was that at 12.15 or at 12.24? Was there reasonable suspicion by that time? And was the officer diligently pursuing the means of investigation to confirm or dispel his suspicions? Or put another way, was the detention delayed unreasonably by suspicionless or unrelated questioning? And the answer to the last one is certainly no. Throughout and the facts are straight from the magistrate judge's R&R because she sets out the facts that she found very succinctly and thoroughly goes through those factors that she considered in determining reasonable suspicion. Nervousness, which she found to be weak, gave little weight to that. The late night and implausible travel plans, which she said were somewhat dubious and gave some weight, especially in the context of a 24-hour rental. That neither was an authorized driver, which she gave some weight to. The inconsistencies in the travel plans were entitled to some weight. Harris's apology to the defendant and her change of behavior when asked about whether there was any packages in the car also was given some weight. And the magistrate judge found that the handing of all the paperwork, Winters handing all the paperwork to the officer and also Winters hanging up mid-sentence, she did not give any weight to. I think the three strongest indicators there are the rental agreement without the authorized drivers, the inconsistent travel plans, and these are actually inconsistent travel plans, and the dubiousness of the travel plans. Your colleague seems to indicate, you used the phrase, at least as I heard it, that it was okay for the officer to reasonably pursue his suspicions, that it wasn't reasonable not to do something more about the contract and the cousin, that in effect at that point he was letting his suspicions fester rather than actually trying to resolve them. What do you say to that? Well, first of all, by the time that the officer had said that he had gathered all the information from the traffic stop, that's 12-17, the officer already had a number of factors that he considered reasonable suspicion. The officer could have spoken on the phone to someone who claimed to be the authorized renter of the vehicle, but at that point you could see that the officer's questioning is really more about trying to settle the confusion about the travel plans and that he had asked Ms. Harris first about what the travel plans were and she had said going to Memphis to visit family and to rest and then that she was going on to Chicago and then she'd fly back to Atlanta from there. Of course, neither one of them initially mentioned Chicago and their plans until they were prompted to go further. Also, the fact that she had a Memphis driver's license and was living in Atlanta, the fact that this was a one-way, 24-hour rental car in someone else's name. Is it suspicious to have a Memphis driver's license when you're living in Atlanta? Don't people move around? Right, right. In and of itself, no, it's not suspicious. I think I would consider it. If you're going back to Memphis to see your family. Right, right. I think I would consider it a weak factor, but a factor in context with all the other factors that Ms. Harris was saying. And then Officer Dugan specifically says that he's going to finish the citation after talking to the Winters about the travel plans, and he does. And he goes and he asks Winters specifically about their travel plans and that's when Winters says that they're going to stay in Memphis two or three days instead of overnight. He also says that Ms. Harris is flying back from Memphis instead of going on to Chicago, as she had stated. Those are two pretty significant inconsistencies between their two statements of the travel plans. And then Officer Dugan goes back to Ms. Harris and says, Mr. Winters told me this, that you're going to stay in Memphis longer. What do you say to that? So he's still pursuing that investigation on these travel plans. He hasn't given up that line of investigation. He's still trying to clarify that. Now, he had not talked on the phone or wanted to talk on the phone with someone that was believed to be Mr. Winters' cousin, but he still was actively and diligently pursuing. If the cousin had said fine, they can have the car, that wouldn't have affected the travel plans issue. Exactly. Yes, that's exactly right. Plus, also, this would not be a situation where the officer could call the rental car agency and get some confirmation from them. This would be some unknown person on a phone that the defendant has dialed. So there's some veracity there. It would be difficult to confirm that. But those things, the dubious travel plans, the unauthorized drivers on the rental, and the inconsistencies in the travel plans. There's nothing that they ever asked him to call the cousin. Is there anything in the record that they said, oh, you know, call my cousin, he'll tell you it's okay? Mr. Winters says, I can call my cousin for you. That's what he says that. But if you compare this with, and, of course, all the cases are such a fact-specific question that the cases have said that they don't provide a lot of precedential value because of that. But if you look at United States v. Hill, United States v. Ramos, United States v. Orsolini, and United States v. Randall, all four of those Sixth Circuit cases have those three factors in combination. The rental contract was something wrong with that. The inconsistent travel plans between the driver and passenger and the dubious nature of the travel plans themselves, like Orsolini, I think the driver was not sure how he got to El Paso to buy the car when he had flown into Arlington. Those types of questions are all consistent with these four prior cases, and we believe significantly show that there was reasonable suspicion, along with, of course, in combination with the other lesser factors like the nervousness, the lateness of the night, Harris's apology, and the change of behavior. But the question really isn't whether the officer should have called the defendant's cousin, but whether the officer was, the totality of the circumstances surrounding the stop indicates the duration of the stop as a whole included any delays that were due to suspicionless or unrelated questioning. And in that case, there really isn't that. And as the court has already noted, the drug detection dog, Red, was at the scene. And so after the officer had asked both individuals for consent to search, he immediately went and got the dog, and there was just about a minute or maybe 90-second delay until the dog alerted to the odor of narcotics. Unless you have any other questions, Adam. Thank you. Mr. Pickrell, you have your three minutes for rebuttal. Thank you, Your Honor. Factually, both the issue with regard to the rental car and the issue with regard to travel plans, communications with relatives both with regard to the cousin in the rental contract and family in Chicago was offered to the officer, and he declined to pursue that line of inquiry. Those are the facts. I understood the part about the cousin. You said about family. Family in Chicago, travel plans. We're going to Chicago through Memphis. If you have questions about that, you can call my relatives in Chicago and they can talk about the fact that we're expected in Chicago. But he declined. The key fact here is the thing that he had suspicion about, he declined to pursue. Although the fact that they had the relatives in Chicago, what's suspicious is the detour to Memphis. That is, it's plausible to rent a car in Atlanta on 24 hours and drive to Chicago in 10 or 12 hours. It's the Memphis detour that's Except that's where her family was from and that's where her license shows her home to be. And if they had questions, he could talk to the family about what their travel plans were. And he declined to pursue that inquiry. This is like 1 in the morning? It's past midnight. I'm not sure the relatives would appreciate it. But here the issue is, it's like the old saying. To a carpenter, everything looks like a nail. To a drug and addiction officer, everybody looks like a drug dealer. Let's get it all red. And when all red wags its tail or barks, then we'll search. The question for this court and the question that the Supreme Court has been trying desperately to guide the lower courts with is what is the limiting factor on the powers of the police? And the Supreme Court in Illinois v. Cabalas and in Arizona v. Johnson said you cannot prolong a traffic stop into something else. That's the limiting factor. And so your Honor, Judge Boggs, it matters that in Illinois v. Cabalas the drug dog search took place while the ticket was being written. Your Honor may say, well that's not logical. The Supreme Court is trying to have a limiting factor. That's what they're trying to do in Illinois v. Cabalas, in Arizona v. Johnson, and possibly in the United States v. Rodriguez. What is the limiting factor? When this court, when lower court judges, when magistrates, when district court judges are looking at these Fourth Amendment issues, what is the limiting factor on the power of the state to stop free people who are traveling in interstate commerce and deciding to run a drug dog over them? And that's why we cited Florida v. Jardim. Because the direction of the law is not in the direction of the state. In Illinois v. Cabalas, there was a question about whether or not the Fourth Amendment privacy interest really was sufficient to even constitute a Fourth Amendment question. Well that's been resolved by Florida v. Jardim. That when you run a drug dog search on somebody's property, you've got a Fourth Amendment problem. And since the Fourth Amendment covers persons, houses, and effects, effects like Mr. Winter's bag, then the Fourth Amendment is implicated. Thank you, Your Honor. And if I could say, thank you for granting oral argument in this case. Thank you, counsel. Case will be submitted. Judge Hood has reminded me, because Mr. Pickrell appears before us in various statuses, but you took this one CJA and we appreciate your taking it under that. I know you're not getting paid your usual rates for that. So that case is submitted. The remaining cases will be submitted.